IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ROCKET LEARNING, INC., et al., | |
| Plaintiffs, | |
| v. | CIVIL NO.: 10-2252 (FAB) |
| JESÚS RIVERA SÁNCHEZ, in his personal capacity and as the Secretary of the Puerto Rico Department of Education, | |
| Defendant. | |

## REPORT AND RECOMMENDATION

### I.    PROCEDURAL HISTORY

On December 21, 2010, plaintiffs Rocket Learning, Inc. ("Rocket Learning"), Learning Alliances, LLC ("Learning Alliances"), Night Star Job College, Inc. ("Night Star"), CEPDI, Inc. ("CEPDI"), and Best Educational Trends, Inc. ("Best Educational Trends," and together, "plaintiffs") filed a verified complaint in the instant action against the Secretary of the Puerto Rico Department of Education ("PRDE") Jesús Rivera Sánchez ("Rivera-Sánchez") in his personal and official capacities.  (Docket No. 1.)  Claiming, *inter alia*, that defendant intentionally and arbitrarily favored a select number of companies over plaintiffs during the enrollment process for the academic year 2010-11 Supplemental Education Services ("SES") program, plaintiffs seek injunctive relief and damages under 42 U.S.C. § 1983 ("Section 1983") and declaratory relief under 28 U.S.C. § 2201. Id.

1

That same day, plaintiffs filed a motion for preliminary injunction against defendant pursuant to Fed. R. Civ. P. ("Rule") 65(a).  (Docket No. 3.)  An evidentiary hearing was held on January 20 and 21, 2011 and on March 24, 2011, the court denied plaintiffs' motion for preliminary injunctive relief and defendant's request for dismissal for lack of jurisdiction.  (Docket Nos. 57; 58; 65; 67; 71; 95.) The next day, plaintiffs filed an amended verified complaint (the "amended complaint"), adding a claim for damages by plaintiff Learning Alliances.  (Docket No. 97.)

Pending before the court is defendant's motion to dismiss the amended complaint under Rule 12(b)(1) and (6).  (Docket No. 99.)  Plaintiffs have filed an opposition (Docket No. 103), and both parties have since filed reply memoranda.  (Docket Nos. 106; 109.)  The motion has been referred to the undersigned for a report and recommendation.  (Docket No. 100.)

## II.    FACTUAL BACKGROUND

The following facts are drawn from plaintiffs' amended complaint (Docket No. 97) and treated as true for purposes of the pending motion:[1]

Title I, Part A, of the Elementary and Secondary Education Act of 1965 ("ESEA"), as amended by the No Child Left Behind Act of 2001, requires the PRDE to offer the Supplemental Educational Services ("SES") program to students from low income families.  (Docket No. 97, ¶¶ 6-7.)  The SES program entitles such students to receive – at no cost – tutoring services provided by private or public organizations chosen by their families.  (Docket No. 97, ¶¶ 7-8.)

In order to qualify as a provider under the SES Program, companies submit annual proposals for certification or re-certification through a Request for Qualification ("RFQ"), which determines

---

[1]Plaintiffs' amended complaint also references various exhibits.  (Docket No. 97.)  Although exhibits attached to a complaint are deemed part of the same pursuant to Rule 10, in this case plaintiffs have failed to attach any exhibits to their amended complaint.  (Docket No. 97.)  Therefore, only the allegations themselves shall be taken into consideration in deciding the present motion.

whether they will be eligible to enroll students for the coming academic year.  (Docket No. 97, ¶ 10.) Plaintiffs are a group of providers that were certified under the program for the 2010-11 academic year.  (Docket No. 97, ¶ 11.)

In order to qualify under the program, providers' proposals must comply with the SES manual.  (Docket No. 97, ¶ 12.)  Once submitted, a proposal cannot be amended except as requested by the PRDE.  Id.  The manual in place at the time providers submitted their proposals for the 2010-11 academic year (the "Old Manual") limited the types of prizes that could be awarded to students at the conclusion of the course to medals, trophies, and certifications, as well as educational materials, such as games, books and dictionaries.  (Docket No. 97, ¶ 14.)  The Old Manual prohibited the promotion of any benefit or gift during the enrollment process, as well as the giving of any electronic device at the conclusion of the course.  Id.  Furthermore, neither the Old Manual nor the RFQ required proposals to specifically list all electronic devices to be used as part of a provider's program.  (Docket No. 97, ¶ 16.)

In August 2010, when providers began promoting their services to parents and students for the coming year, certain providers sought to attract students to their programs by offering electronic devices as end-of-program gifts.  (Docket No. 97, ¶ 17.)  Such inducements violated the rules then in effect and ran counter to the purposes of the SES program, leading students to enroll with providers based on the devices offered rather than the academic merit of the program.  (Docket No. 97, ¶ 18.)  The Puerto Rico SES Provider Association ("APROSES") sent a letter to the PRDE asking the agency to enforce its prohibition against the use of electronic devices as enrollment incentives.  (Docket No. 97, ¶ 19.)  However, the PRDE took no immediate action.  Id.

In September 2010, the Secretary issued a new version of the manual (the "New Manual") that took immediate effect, imposing for the first time a requirement that all technological devices used in a provider's program had to be specifically identified in the company's proposal. (Docket No. 97, ¶ 20.)  The prohibition against the use of electronic devices as incentives essentially remained unchanged.  Id.  Despite this rule change, the PRDE did not request or permit providers to submit new proposals conforming with the rule. (Docket No. 97, ¶ 20.)

During the first enrollment process, which took place in October 2010, several providers disregarded the prohibition on using incentives, and instead concentrated their enrollment efforts on promoting electronic devices that would be given away at the completion of the program.  (Docket No. 97, ¶ 21.)  These companies saw large increases in their enrollment figures, while providers that adhered to the prohibition experienced a sharp decline in enrollment.  (Docket No. 97, ¶ 22.)

Many of the providers that had abided by the rules wrote letters to the PRDE, complaining of these infractions.  (Docket No. 97, ¶ 23.)  On October 20, 2010, a number of providers met with the PRDE to again bring the issue to his attention.  (Docket No. 97, ¶ 24.)  The first enrollment process was subsequently annulled.  (Docket No. 97, ¶ 25.)  While it was within his power to do so, the PRDE did not de-certify the offending providers.  (Docket No. 97, ¶ 26.)

As part of their continuing effort to persuade the PRDE to address the unfairness of the rule change announced in the New Manual, certain providers conducted a demonstration in front of PRDE's headquarters, during which plaintiffs demanded that the PRDE take immediate action.[2] (Docket No. 97, ¶ 28.)   A meeting was held between the PRDE and representatives of the

---

[2] While plaintiffs do not specifically state when the demonstration occurred, it can be inferred – based on the chronology of the amended complaint – that it took place between November 1 and November 16, 2010.  (Docket No. 97, ¶¶ 25-29.)

demonstrating companies, at which plaintiffs again voiced their demands.  Id.  However, the PRDE took no action.  Id.

On November 16, 2010, the PRDE sent an e-mail to a select group of providers requesting additional information regarding the electronic devices the providers planned on using in their tutoring services.  (Docket No. 97, ¶ 29.)  This request essentially permitted those providers to modify or amend their proposals, allowing them to take advantage of a later rule change.  (Docket No. 97, ¶ 29.)  Plaintiffs did not receive the e-mail despite the fact that some of their proposals included educational content requiring the use of electronic devices, such as audiobooks, music and video.  (Docket No. 97, ¶ 32.)

On November 17, 2010, the PRDE announced that a new enrollment process would take place between December 6 and December 15, 2010.  (Docket No. 97, ¶ 33.)  On December 4, 2010 – two days prior to the start of the second enrollment period – the PRDE placed a full-page ad in El Nuevo Día, a local newspaper, announcing, for the first time, that students would be allowed to keep the educational equipment used during the SES program. (Docket No. 97, ¶ 34.)  Additionally – contrary to the provisions of both the Old and New Manual – providers would be allowed to promote such equipment during the enrollment process, provided that the gifts were not the focal point of the provider's program.  (Docket No. 97, ¶ 35.)

While the text of the rule change appeared to indicate that all providers would have an equal opportunity to give away electronic equipment at the conclusion of the course and promote the same, the PRDE clarified in an e-mail that only companies that had complied with the requirements of the New Manual to list all electronic devices could now offer the devices at the end of the course and promote them as part of the enrollment process.  (Docket No. 97, ¶¶ 38-39.)  Thus, as a result of the

various rule changes enacted by the PRDE during the enrollment process for the 2010-11 academic year, only companies that had received the November 2010 e-mail could use electronic devices as incentives during the December enrollment period.  (Docket No. 97, ¶ 39.)

## III.   LEGAL ANALYSIS

### A.   Motion to Dismiss Standard Under Fed. R. Civ. P. 12(b)(1) & (b)(6)

Defendant seeks dismissal of this case for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and for failing to state a claim upon which relief can be granted under Rule 12(b)(6). (Docket No. 99.)  When confronted with motions to dismiss under both Rules 12(b)(1) and 12(b)(6), a court "ordinarily ought to decide the former before broaching the latter" since, if subject matter jurisdiction is lacking, an assessment of the merits "becomes a matter of purely academic interest." Deniz v. Municipality of Guaynabo, 285 F.3d 142, 149-150 (1st Cir. 2002) (citations omitted).

A motion to dismiss for lack of subject matter jurisdiction is decided under Rule 12(b)(1). Valentín v. Hospital Bella Vista, 254 F.3d 358, 362 (1st Cir. 2001).  In assessing such a motion, the plaintiff has the burden of establishing that the court has subject matter jurisdiction over the case. Amoche v. Guar. Trust Life Ins. Co., 556 F.3d 41, 48 (1st Cir. 2009).  Under Rule 12(b)(1), the court must "construe the complaint liberally, treating all well-pleaded facts as true and drawing all reasonable inferences in favor of the plaintiffs."  Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998).  In making such a determination, the court may also "review the evidence on record, including affidavits and depositions, as opposed to a dismissal request under any other subsection of Rule 12(b)."  Garcia-Clavelo v. Nogueras-Cartagena, 2010 U.S. Dist. LEXIS 116191, at *5 (D.P.R. Nov. 1, 2010).

Under Rule 12(b)(6), a defendant may move to dismiss an action against him for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court held that to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "a plausible entitlement to relief." Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95-96 (1st Cir. 2007) (quoting Twombly, 550 U.S. at 599). In considering such a motion, the court accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in plaintiff's favor. See Correa-Martínez v. Arrillaga-Belendez, 903 F.2d 49, 51 (1st Cir. 1990). While Twombly does not require of plaintiffs a heightened fact pleading of specifics, it does require enough facts to have "nudged their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570. Accordingly, in order to avoid dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555.

In Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court upheld Twombly and clarified that two underlying principles must guide this court's assessment of the adequacy of a plaintiff's pleadings when evaluating whether a complaint can survive a Rule 12(b)(6) motion. See Iqbal, 129 S.Ct. at 1949-50. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 555). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." Iqbal, 129 S.Ct. at 1950 (citing Twombly, 550 U.S. at 556). Thus, any nonconclusory factual allegations in the complaint, accepted as true, must be sufficient to give the claim facial plausibility. Iqbal, 129 S.Ct. at 1950. Determining the existence of

7

plausibility is a "context-specific task" which "requires the court to draw on its judicial experience and common sense." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' 'that the pleader is entitled to relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)). Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation."  Id. at 1950-51 (citing Twombly, 550 U.S. at 567).

In two recent cases, the First Circuit has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" "even if seemingly incredible." Sepúlveda-Villarini v. Dep't of Educ. of P.R., 2010 U.S. App. LEXIS 25228, at *11 (1st Cir. Dec. 10, 2010) (citing Twombly, 550 U.S. at 556); Ocasio-Hernández v. Fortuño-Burset, 2011 U.S. App. LEXIS 6763, at *24 (1st Cir. Apr. 1, 2011) (citing Iqbal, 129 S.Ct. at 1951).  Instead, the court has emphasized that "[t]he make-or-break standard ... is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." Ocasio-Hernández, 2011 U.S. App. LEXIS 6763, at *25 (quoting Sepúlveda-Villarini, 628 F.3d at 29).

**B.    Claims Against Defendant in his Official Capacity**

Eleventh Amendment Immunity

Defendant argues that plaintiffs' claims against him in his official capacity are barred by the Eleventh Amendment.  (Docket No. 99, pp. 7-9.)  As the court has already denied plaintiffs' request

for injunctive relief (Docket Nos. 71; 95), the undersigned addresses this issue only with respect to plaintiffs' declaratory judgment claim.[3]

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  The Supreme Court, however, has expanded the doctrine of sovereign immunity beyond the literal words of the Eleventh Amendment, holding that state governments, absent their consent, are not only immune from suit by citizens of another state, but by their own citizens as well.[4]  See Alden v. Maine, 527 U.S. 706, 728-29 (1999).  This immunity also "extends to entities that are determined to be arms of a state."  Pastrana-Torres v. Corporación de Puerto Rico Para La Difusión Pública, 460 F.3d 124, 126 (1st Cir. 2006).  Courts have held that the PRDE is an arm of the state. See Rivera-Carrero v. Rey-Hernández, 2006 U.S. Dist. LEXIS 12658, at *17 (D.P.R. Mar. 7, 2006) (citation omitted).

Although a state may not be sued directly absent its consent, the Ex Parte Young doctrine permits suits to be brought against state officers in their official capacities to compel them to comply with federal law.  Ex Parte Young, 209 U.S. 123 (1908).  The Ex Parte Young opinion was based on the theory that since a state cannot authorize unconstitutional action, an offending officer is "stripped of his official or representative character and ... subjected in his person to the consequences of his individual conduct."  Guillemard-Ginorio v. Contreras-Gomez, 585 F.3d 508, 530 n.24 (1st

---

[3]While in his motion defendant also contends that the Eleventh Amendment bars claims for money damages against defendant in his official capacity (Docket No. 99, p. 9), plaintiffs only brings said claims against the Secretary in his personal capacity.  (Docket No. 97, ¶ 73.)

[4]The Commonwealth of Puerto Rico is treated as a state for purposes of Eleventh Amendment immunity analysis.  Díaz-Fonseca v. Puerto Rico, 451 F.3d 13, 33 (1st Cir. 2006) (citation omitted).

Cir. 2009) (quoting <u>Pennhurst State School and Hospital v. Halderman</u>, 465 U.S. 89, 102 (1984)). The doctrine has come to stand for an exception to the immunity provided by the Eleventh Amendment in suits against state officials seeking prospective declaratory or injunctive relief under federal law.  <u>Id.</u>

In this case, plaintiffs seek a declaratory judgment that the "discriminatory, arbitrary and irrational acts of the Secretary constitute violations of the Substantive and Procedural Due Process of Law and Equal Protection Clauses of the U.S. Constitution and ... [violate]... the First Amendment." (Docket Nos. 97, ¶85.)  The seventh cause of action of the amended complaint, however, limits the scope of the declaratory judgment requested to the "acts of the Secretary described above", that is those past events described in the complaint.  (Docket No. 97, ¶¶82-83). Therefore, plaintiffs' declaratory judgment claim shall be construed as solely seeking retrospective relief.  As such, "the issuance of a declaratory judgment in these circumstances would have much the same effect as a full-fledged award of damages or restitution by the federal court, the latter kinds of relief being of course prohibited by the Eleventh Amendment." <u>Mills v. Maine</u>, 118 F.3d 37, 54-55 (1ˢᵗ Cir. 1997) (citation omitted).  Indeed, plaintiffs' claim for declaratory relief is based on the same underlying violations as their claims for money damages against defendant in his personal capacity.  (Docket No. 97.)  To allow plaintiffs to seek such relief would  thus constitute an "'end run' around the rest of the Supreme Court's Eleventh Amendment jurisprudence, particularly its limitations on the <u>Ex Parte Young</u> doctrine."  <u>Mills</u>, 118 F.3d at 55 (citation omitted).  Therefore, it is hereby recommended that plaintiffs' claim for declaratory relief be DISMISSED due to defendant's Eleventh Amendment immunity.

### C.   Claims Against Defendant in his Personal Capacity

Having addressed the immunity issue, the undersigned now turns to defendant's claim that plaintiffs' amended complaint should be dismissed under Rule 12(b)(6) for failing to articulate a plausible Section 1983 claim under the standard set forth in Iqbal.  (Docket No. 99, pp. 9-30.)

As an initial matter, in their opposition to the motion to dismiss, plaintiffs cite to the undersigned's prior report and recommendation concerning the preliminary injunction hearing, requesting that the court take into consideration its findings from the hearing in ruling on the present motion.  (Docket No. 103.)   However, in the context of a motion to dismiss pursuant to Rule 12(b)(6), courts are generally limited to considering "facts and documents that are part of or incorporated into the complaint." Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008).  If a court relies on other material outside the complaint, it must convert a motion to dismiss into a motion for summary judgment.  Trans-Spec Truck Serv., 524 F.3d at 321.  See MT Holly Citizens in Action, Inc v. Twp. of Mt. Holly, 2009 U.S. Dist. LEXIS 100032, at *13 (D.N.J. Oct. 23, 2009) ("[i]n order ... for the [c]ourt to consider its previous findings and the evidence presented at the preliminary injunction hearing, the [c]ourt must convert the present motions to dismiss into ones for summary judgment"); Encore Operating LP v. Morris, 2007 U.S. Dist. LEXIS 12003, at *3-*7 (D.N.D. Feb. 20, 2007) (court refused to take into consideration testimony and findings of fact from a preliminary injunction hearing, among other things, on a motion to dismiss); Roland v. Air Line Emples. Assn., 1985 U.S. Dist. LEXIS 20160, at *2 n.1 (N.D. Ill. May 2, 1985) ("[b]ecause this is a motion to dismiss, however, this [c]ourt's focus is limited to the pleadings. Thus, factual findings of the court based upon the brief preliminary injunction hearing will not be considered for purposes of the instant motion.").  Since the undersigned declines to convert the

present motion to a motion for summary judgment – and, indeed, no party requests such a conversion – the findings of the preliminary injunction hearing shall not be taken into consideration in evaluating the present motion.

Defendant also argues that several of plaintiffs' allegations are not sufficiently specific, and therefore should be deemed conclusory under the Iqbal standard. (Docket No. 99, pp. 9-11.) Among other things, defendant points to the fact that the amended complaint does not 1) list the providers that allegedly violated SES regulations by promoting electronic devices during August 2010 or indicate what electronic devices they offered, 2) identify which plaintiffs included audiobooks, music and/or videos in their proposals, and 3) include facts regarding the electronic devices offered by other SES providers during the December 2010 enrollment period to show theat they were gifts rather than educational materials.  Id.

It is well settled that there is no heightened pleading standard under Section 1983. Alvarez-Estrada v. Alemañy-Noriega, 2011 U.S. Dist. LEXIS 73432, at *10 (D.P.R. May 25, 2011) (citing Educadores Puertorriqueños En Acción v. Hernández, 367 F.3d 61, 67 n.2 (1st Cir. 2004)). Rather – pursuant to Rule 8(a) – a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  Such a statement need only "give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  Gargano v. Liberty Int'l Underwriters, 572 F.3d 45, 48-49 (1st Cir. 2009) (quoting Twombly, 550 U.S. at 555). Consequently, there is no requirement that a complaint state "detailed factual allegations" as long as it indicates "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Alvarez-Estrada, 2011 U.S. Dist. LEXIS 73432 at * 11 (citing Iqbal, 129 S.Ct. at 1949).  In view of the

above, while plaintiffs' amended complaint lacks certain details, it adequately notifies defendant of the claims alleged and therefore shall not be dismissed on this basis.[5]

In addition, defendant disputes plaintiffs' allegation that the New Manual was the first time that providers were required to identify all technological devices to be used in the teaching process, citing an exhibit to the amended complaint.  (Docket Nos. 97, ¶ 20; 99, pp. 11-13.)  However, as stated above, plaintiffs failed to attach any exhibits to their amended complaint.  Therefore, the undersigned shall not take said exhibit into consideration in making its determination regarding the present motion.  See Trans-Spec Truck Serv., 524 F.3d at 321.  Rather, pursuant to the motion to dismiss standard, the undersigned shall construe all "well-pleaded facts as true and draw[] all reasonable inferences in favor of the plaintiffs."  Viqueira, 140 F.3d at 16.

Having addressed these preliminary issues, the undersigned now turns to the merits of plaintiffs' claims.

1. **Plaintiffs' Section 1983 Claims**

Plaintiffs seek redress for violations of the First and Fourteenth Amendments under Section 1983, which allows individuals within the United States to vindicate substantive rights under the United States Constitution and federal laws through a civil action in federal court.  See Rodríguez-García v. Municipality of Caguas, 354 F.3d 91, 99 (1st Cir. 2004) (citing Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).  Under Section 1983, plaintiffs must first show that "the conduct complained of was committed by a person acting under color of state law."  Destek Group, Inc. v. State of New Hampshire Public Utilities Commission, 318 F.3d 32, 39 (1st Cir. 2003).  Plaintiffs then must demonstrate that the defendants' conduct deprived them of rights, privileges, or

---

[5] Furthermore, as the parties have already engaged in a preliminary injunction hearing in this case, to the extent defendant argues that he lacks proper notice of the claims, such an argument is unpersuasive.  (Docket No. 99, pp. 9-11.)

immunities secured by the Constitution of the United States.  Gutierrez-Rodríguez v. Cartagena, 882 F.2d 553, 559 (1st Cir. 1989).  "To satisfy the second element, plaintiffs must show that the defendants' conduct was the cause in fact of the alleged deprivation."  Rodríguez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997).

> ### a.    Fourteenth Amendment

Pursuant to Section 1983, plaintiffs assert equal protection, procedural due process and substantive due process claims against defendant under the Fourteenth Amendment.  (Docket No. 97, ¶¶ 46-62.)  The Due Process and Equal Protection Clauses of the Fourteenth Amendment provide that "[no] State [shall] deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  Each claim will be discussed in turn.

<u>Equal Protection</u>

Plaintiffs allege that defendant favored a select group of providers in the SES enrollment process for the 2010-11 academic year by 1) "retroactively imposing" on providers the requirement that proposals contain a detailed listing of all electronic devices to be used in the provision of services, 2) requesting additional information from only certain providers regarding the technological devices included in their proposals, allowing those providers – but not others – to, in effect, amend their proposals to comply with the new rule, and 3) announcing two days prior to the enrollment period that only providers that complied with this rule could give students the devices at the conclusion of the program and promote such giveaways during the enrollment period.  (Docket No. 97, ¶¶ 6-45.)  Further, plaintiffs contend that defendant intentionally took these actions knowing that

those providers – including plaintiffs – that were unable to participate in such promotions would suffer significant reductions in enrollment.  (Docket No. 97, ¶ 50.)

In order to establish an equal protection claim, a plaintiff must show that it was treated differently from "others similarly situated ... based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Clark v. Boscher, 514 F.3d 107, 114 (1ˢᵗ Cir. 2008) (quoting Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 57 (1ˢᵗ Cir. 2006)); see Marrero-Gutierrez v. Molina, 491 F.3d 1, 9 (1st Cir. 2007) ("[u]nder the Equal Protection Clause, similarly situated entities must be accorded similar governmental treatment.") (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)).  To determine whether two or more entities are "similarly situated," courts examine "whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated." SBT Holdings, LLC v. Town of Westminster, 547 F.3d 28, 34 (1st Cir. 2008) (citing Barrington Cove, LP v. R.I. Hous. & Mortg. Fin. Corp., 246 F.3d 1, 8 (1st Cir. 2001)).  "Exact correlation is neither likely nor necessary, but the cases must be fair congeners.  In other words, apples should be compared to apples." Id.

At the outset, defendant argues that plaintiffs have not established that the providers which included technology in their proposals are "similarly situated" to those that did not, claiming that it was proper of defendant to only request information regarding technological devices from those providers that included such devices in their proposals, suggesting that plaintiffs' proposals did not do so.  (Docket No. 99, p. 15.)  However, defendant elsewhere concedes that plaintiffs' proposals indicated that they planned on using music and audiobooks in their tutorials.  (Docket No. 99, p. 14.) In any event, in their amended complaint plaintiffs allege that they did not receive the e-mail in

question despite the fact that some of their proposals included educational content that required the use of electronic devices, such as audiobooks, music and video.  (Docket No. 97, ¶ 32.)  In the context of a motion to dismiss, where a court must accept as true all of the allegations contained in a complaint, such an allegation is sufficient to show that plaintiffs were substantially similar to other providers that included technology in their proposals and that received the November 2010 e-mail.

Plaintiffs argue that the court should apply the strict scrutiny standard in evaluating their equal protection claims – stating that defendant's conduct has deprived them of their First Amendment right to commercial speech.  (Docket No. 97, ¶¶ 46-53, 63-71.)  Defendant claims that since commercial speech is not a fundamental right, defendant's actions should instead be evaluated through the lens of the more lenient rational basis test.  (Docket No. 99, p. 13.)  Under this standard, defendant maintains that plaintiffs have failed to show a "reasonably conceivable set of facts [that] could ground a rational relationship between the challenged classification and the government's legitimate goals."  (Docket No. 99, p.16.)

As discussed in more detail below, plaintiffs' commercial speech claim – alleging that defendant prohibited them from promoting the giving away of technological devices during the December enrollment period – is, at its root, an equal protection claim asserting that plaintiffs – unlike other similarly situated providers – were unfairly prohibited from giving away devices at all.  See Ford Motor Co. v. Tex. DOT, 264 F.3d 493, 506 (5th Cir. 2001) (rejecting plaintiff's argument that law prohibiting manufacturers from retailing cars to consumers infringed manufacturer's First Amendment right to advertise such ability on its website, finding that under such reasoning "a petitioner could bootstrap themselves into the heightened scrutiny of the First Amendment simply by infusing [their allegations of] prohibited conduct with some element of speech.") (citing

<u>Pittsburgh Press Co. v. Pittsburgh Com. on Human Relations</u>, 413 U.S. 376, 389 (U.S. 1973) ("[a]ny First Amendment interest which might be served by advertising an ordinary commercial proposal and which might arguably outweigh the governmental interest supporting the regulation is altogether absent when the commercial activity itself is illegal and the restriction on advertising is incidental to a valid limitation on economic activity.").  Plaintiffs' commercial speech claim also fails the first prong of the <u>Central Hudson</u> test: since plaintiffs were banned from the underlying activity, being allowed to promote that they could give away technological devices – when by rule they could not – would constitute a "misleading" statement that would be related to "unlawful activity," and thus not be protected as commercial speech.  <u>Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York</u>, 447 U.S. 557, 561 (1980)).  Therefore, the undersigned shall construe plaintiffs' equal protection cause of action as a "class of one" claim, which requires plaintiffs to allege that they "ha[ve] been intentionally treated differently from others similarly situated and ... [that] there is no rational basis for the difference in treatment." <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000) (per curiam); (Docket No. 99, p. 16.)

While conceding that they do not know the exact motivation for defendant's alleged discriminatory conduct, plaintiffs state that defendant intentionally excluded them from the PRDE's November 2010 e-mail requesting additional information from a select group of providers regarding the technological devices they planned on using in their tutoring sessions, despite the fact that some of their proposals included technological devices.[6]  (Docket No. 97, ¶¶ 29-32.)  The Old Manual, which had been in effect at the time providers submitted their proposals for the 2010-11 academic

---

[6]Plaintiffs allege that following the retroactive rule change set forth in the New Manual,  they openly criticized the Secretary and called on him to take corrective action, taking part in a demonstration in front of PRDE headquarters in which they "denounced" the rule change and meeting with the PRDE officials to again voice their demands.  (Docket No. 97, ¶¶ 28, 45.)  However, the amended complaint does not explicitly state that this was the motivation behind defendant's alleged discriminatory conduct.

year, had not required proposals to include an exhaustive list of all electronic devices providers planned on using as part of their services.  (Docket No. 97, ¶ 16.)  Such language was added, however, in the New Manual, which was issued in September 2010 and took immediate effect. (Docket No. 97, ¶ 20.)  Therefore, since – according to the RFQ – amendments to proposals are only permitted at the request of the PRDE, plaintiffs had no means of making their proposals compliant with the New Manual other than at the invitation of the PRDE.  (Docket No. 97, ¶ 12.) The importance of the New Manual's requirement that all electronic equipment be listed in the proposal became evident following the PRDE's announcement – two days prior to the start of the second enrollment process – that the rules would be changed again so that providers, for the first time the SES Program's history, could give away electronic devices at the conclusion of services and could promote that fact during the enrollment process.  (Docket No. 97, ¶¶ 34-35.)  The PRDE soon clarified that only those providers that had complied with the retroactive requirement that proposals list all electronic devices would be permitted to offer the devices at the conclusion of the program and to promote the giveaways.  (Docket No. 97, ¶¶ 38-39.)  Plaintiffs allege that the PRDE's e-mail gave those select providers an unfair opportunity to modify their proposals to conform to this last minute rule change.  (Docket No. 97, ¶¶ 29-30.)

It is reasonable to infer, based on plaintiffs' allegations regarding the August 2010 enrollment process, that the PRDE was aware of the detrimental impact that permitting some providers – but not all – to promote such giveaways would have on the providers, including plaintiffs, that were not permitted to do so.  (Docket No. 97, ¶¶ 24-25.)  During August 2010, a number of providers had disregarded the prohibition against promoting electronic devices as incentives, leading to a dramatic increase in their enrollment in the October 2010 enrollment period as the process "deteriorated into

a competition about gifts instead of a competition based on the quality of pedagogical offerings."
(Docket No. 97, ¶¶ 22, 25.)  The companies that had followed the rules experienced "significant"
reductions in enrollment.  (Docket No. 97, ¶ 22.)  In fact, the enrollment process became so
"distorted" that the PRDE was forced to annul it in November 2010.  (Docket No. 97, ¶ 25.)
Plaintiffs allege that the PRDE's response to an e-mail following the December 4, 2010 newspaper
announcement of the rule change confirmed that the Secretary was aware that only certain providers
would be allowed to enjoy "the huge advantage of enrolling students on the basis of gifts of
electronic devices." (Docket No. 97, ¶ 39.)  Based on the foregoing, bearing in mind that in a motion
to dismiss all inferences are made in plaintiffs' favor, plaintiffs should be found to have sufficiently
alleged that defendant intentionally discriminated against them.

> As to whether defendant's actions were rational, the Secretary claims that
>
> [t]he prohibition of not offering electronic devices during the enrollment process –
> unless their use by the students relates to the learning process – directly promotes the
> interest in keeping the parents' selection of SES providers for their children based on
> the merits of the program they offer not on the enticing of the gifts they give away.

(Docket No. 99, pp. 15-16.)  An examination of whether the Secretary acted rationally centers on
both the content and timing of his announcement in a December 4th newspaper advertisement that
students would be permitted to keep the electronic devices used during tutoring services at the
conclusion of the program as long as they were not the focal point of the program.  (Docket No. 97,
¶¶ 34-35.)  As for the decision itself to allow providers to give away electronic devices, as stated
previously, it is reasonable to infer that the PRDE was aware of the significant impact that this could
have on enrollment, based on what occurred during August 2010.  (Docket No. 97, ¶¶ 22, 25.)
However, this decision – in and of itself – does not support a finding that defendant acted so

arbitrarily as to overcome a "presumption of rationality." Baker v. Concord, 916 F.2d 744, 749 (1st Cir. 1990) (citation omitted). Rather, the court finds the last minute and, at times, retroactive procedures described above that defendant employed to allow such giveaways to be irrational, especially concerning the opportunity given to some – but not all – providers to submit additional information regarding their proposals, thus allowing them to take advantage of a change of rules. In view of the above, it is therefore recommended that defendant's motion to dismiss (Docket No. 99) plaintiffs' equal protection claim be DENIED.

Procedural Due Process

Plaintiffs claim that defendant's conduct constituted a "de facto decertification of [p]laintiffs and a deprivation of the proprietary rights of [p]laintiffs represented by [their SES] certification." (Docket No. 97, ¶ 61.) They argue that their SES certification is essentially "worthless" without the opportunity to compete with other providers – on equal terms – to enroll students in their programs. (Docket No. 97, ¶ 44.)

Procedural due process claims require courts to determine first if plaintiffs were deprived of a liberty or property interest protected by the United States Constitution and, if so, whether the "procedures attendant upon that deprivation were constitutionally sufficient." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 886 (1st Cir. 2010) (citation omitted). While due process is flexible, one of the essential requirements of procedural due process is adequate notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." Amsden v. Moran, 904 F.2d 748, 753 (1st Cir.1990) (citation and internal quotation marks omitted). In evaluating the adequacy of the procedures employed, courts "balanc[e] a number of factors, including the nature of the private and public interests involved; the risk of erroneous deprivation accruing under the procedures used ... ;

20

and the probable benefit of demanding additional procedural safeguards." Id.  The threshold question in a due process inquiry is whether the property interest asserted is one protected by the Constitution.  See American Conveyor Corp.v. Guanica, 614 F. Supp. 922, 930 (D.P.R.1985).  "In order to establish a constitutionally protected property interest, the plaintiffs must identify a 'legitimate claim of entitlement' to the property in question -- a claim of entitlement created and defined by 'existing rules or understandings that stem from an independent source such as state law.'"  Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 8 (1st Cir. 2005) (quoting Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972)).  Under this standard, an "abstract need or desire" or a "unilateral expectation" are insufficient to create a constitutionally protected interest. Roth, 408 at 577.

Defendant argues that plaintiffs' due process claims should be dismissed because a SES certification does not constitute a property interest, as – under Puerto Rico law – no government contractor acquires a property interest until a contract is formalized.  (Docket No. 99, p. 19); see Cancel-Acevedo v. Municipality of San Juan, 1 P.R. Offic. Trans. 416 (1973) ("... an agency has the right to revoke the award of a contract at any time before the corresponding contract is entered into, since a contract is not binding on an agency until a formal contract containing all the legal requirements for the performance of the work is executed in writing.") (citation omitted).  Plaintiffs contend that in this case the court should find a property right to attach prior to the execution of the contract due to the significant investments providers must make in order to begin providing services as quickly as possible following execution.  (Docket No. 103, pp. 9-10.)  However, plaintiffs' argument relies in large part on the findings of the preliminary injunction hearing – which, as stated above, the court will not take into consideration for purposes of the present motion – and plaintiffs

do not cite relevant caselaw supporting their position under Puerto Rico law.  (Docket No. 103, pp. 9-11.)  Based on the foregoing, it is hereby recommended that defendant's motion to dismiss (Docket No. 99) plaintiffs' procedural due process claims be GRANTED.

Substantive Due Process

Regarding plaintiffs' substantive due process claims, such a claim bars certain offensive government actions "regardless of the fairness of the procedures used to implement them." Aguilar v. United States Immigration & Customs Enforcement Div. of the Dep't of Homeland Sec., 510 F.3d 1, 21 (1st Cir. 2007) (quoting Daniels v. Williams, 474 U.S. 327, 331 (1986)).  Under substantive due process analysis, courts look to "whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Aguilar, 510 F.3d at 21 (quoting County of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998)).  It must be noted that just as with procedural due process claims, plaintiffs must first show a deprivation of a protected interest in life, liberty or property.  Rivera v. Rhode Island, 402 F.3d 27, 33-34 (1st Cir. 2005).  The "shock the conscience" standard is a high hurdle for plaintiffs, but is necessary to "preserve the constitutional proportions of constitutional claims, lest the Constitution be demoted to what we have called a font of tort law."  Id.

As stated above, plaintiff has failed to sufficiently articulate the basis for their claim that the SES certification qualifies as a property interest.  Additionally, in this case plaintiffs' allegations do not rise to the requisite level.  See, e.g., Pagan v. Calderon, 448 F.3d 16, 31 (1st Cir. 2006) (court stated that it is well-settled that other than where "truly horrendous," "substantive due process doctrine may not, in the ordinary course, be invoked to challenge discretionary permitting or licensing determinations of state or local decisionmakers, whether those decisions are right or

wrong.")  Based on the foregoing, it is hereby recommended that defendant's motion to dismiss (Docket No. 99) plaintiffs' substantive due process claims be GRANTED.

### b.    First Amendment Commercial Speech

Commercial speech is defined as "expression related solely to the economic interests of the speaker and its audience."  El Día, Inc. v. P.R. Dep't of Consumer Affairs, 413 F.3d 110, 115 (1st Cir. 2005) (citing Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York, 447 U.S. 557, 561 (1980)).  Although typically entitled to less shielding under the First Amendment than other forms of speech, commercial speech nonetheless is protected from unwarranted government intrusion.  El Día, 413 F.3d at 115.

Under the framework established in Central Hudson, commercial speech is protected if it is "neither misleading nor related to unlawful activity."  IMS Health Inc. v. Mills, 616 F.3d 7, 21 (1st Cir. 2010) (citing Central Hudson, 447 U.S. at 564).  However, protected commercial speech can be restricted if the "asserted governmental interest is substantial," "the regulation directly advances the governmental interest asserted," and the restriction "is not more extensive than necessary to serve that interest."  Id. (citing Central Hudson, 477 U.S. at 566).

Plaintiffs claim that defendant violated their First Amendment commercial speech rights by prohibiting them from promoting the giving away of electronic devices at the conclusion of the SES program, which affected the number of students that enrolled in their program.  (Docket No. 97, ¶¶ 63-71.)  Defendant counters that it would have been misleading to allow plaintiffs to promote such giveaways, since – by rule – those providers were prohibited from giving away the materials in question, and that misleading commercial speech is not protected.  (Docket No. 99, p. 23); see Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, 425 U.S. 748 (U.S. 1976).

While plaintiffs claim that they were prohibited from promoting the giving away of electronic devices, that claim is merely incidental to the fact that plaintiffs were prohibited from giving away the technological devices at all.  See Ford Motor Co., 264 F.3d at 506 (First Amendment not implicated where claim concerning the ability to advertise conduct on website found to be "only incidental" to the prohibition of the underlying conduct.)  To wit, the court notes that plaintiffs have not claimed that they were prevented from informing parents and students about the approved aspects of their proposals.  (Docket No. 97.)  Thus, the court finds that plaintiffs' commercial speech claim fails the first prong of the Central Hudson test.  Central Hudson, 447 U.S. at 561.  In light of the above, it is hereby recommended that defendant's motion to dismiss (Docket No. 99) be GRANTED as to plaintiffs' First Amendment commercial speech claims.

## 2.    Qualified Immunity

Defendant argues that even if he is found to have violated plaintiffs' constitutional rights, the doctrine of qualified immunity insulates him from civil liability.  (Docket No. 99, pp. 25-30.) Having recommended dismissal of plaintiffs' due process and commercial speech claims, the undersigned shall only address defendant's qualified immunity claim with respect to plaintiffs' equal protection claim.

The qualified immunity doctrine shields public officials from civil suits as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Mitchell v. Forsyth, 472 U.S. 511, 525 (1985).  In making such a determination, courts employ a two-part test. Maldonado v. Fontanes, 568 F.3d 263, 268-69 (1st Cir. 2009).   At the motion to dismiss stage, a court considers: 1) whether plaintiff's allegations, taken as true, establish the violation of a

constitutional right, and 2) whether the constitutional right was clearly established at the time of the challenged conduct.  Sanchez v. Pereira-Castillo, 590 F.3d 31, 52 (1st Cir. 2009) (citing Fontanes, 568 F.3d at 269).  The second step of this analysis has two components, requiring consideration of both "whether the contours of the constitutional right were sufficiently clear at the time of the alleged conduct and also whether, under the particular facts of the case, a reasonable officer would have understood that his behavior violated that clearly established right."  Id. at 52-53.  In essence, "the salient question is whether the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional."  Id. at 53.

As it is recommended herein that plaintiffs be found to have pled a viable equal protection claim pursuant to Section 1983, the first step of the analysis is satisfied.  Regarding the second prong, defendant argues that since his actions were consistent with SES regulations, he cannot be found to have had "fair warning that [his] conduct violated the plaintiff[s'] constitutional rights." Guillemard-Ginorio v. Contreras-Gomez, 585 F.3d 508 (1st Cir. 2009) (quoting Jennings v. Jones, 499 F.3d 2 (1st Cir. 2007)); (Docket No. 99, p. 28.)  It is true that, according to the amended complaint, defendant was permitted to request clarifications from providers regarding their proposals, and – following the rule change announced on December 4, 2010 – to allow the promotion of electronic devices if the devices were included in the proposal. (Docket No. 97, ¶¶ 12, 34-35.)  However, the focus of the present inquiry is not on whether the particular mechanisms defendant employed were permissible under SES regulations in isolation, but rather whether defendant utilized them in a such a manner as to clearly discriminate against a group of similarly situated providers.  As plaintiffs' argue, it is unreasonable that the Secretary "would have thought that in administering the federal funds for the SES program it could treat similarly situated SES

providers in an arbitrary and irrational way" – favoring one group of providers over another – since it is well settled that "[u]nder the Equal Protection Clause, [entities] similarly situated must be accorded similar governmental treatment." <u>Marrero-Gutierrez</u>, 491 F.3d at 9 (citation omitted); (Docket No. 103, p. 13.) Therefore, in view of the above, it is hereby recommended that defendant's request for qualified immunity be DENIED.[7]

## IV.    CONCLUSION

Based on the foregoing, it is hereby recommended that:

•    plaintiffs' claims for declaratory judgment be DISMISSED under the Eleventh Amendment;

•    plaintiffs' claim for injunctive relief be found MOOT due to the court's memorandum and order regarding the preliminary injunction hearing (Docket Nos. 71; 95); and

•    defendant's motion to dismiss plaintiffs' Section 1983 claim against the Secretary in his personal capacity be GRANTED IN PART and DENIED IN PART.  The same should be DENIED as to plaintiffs' equal protection claim and GRANTED as to all other claims.

IT IS SO RECOMMENDED.

The parties have fourteen (14) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this report and recommendation.  Fed R. Civ. P. 72(b); <u>Henley Drilling Co. v. McGee</u>, 36 F.3d 143, 150-151 (1st Cir. 1994); <u>United States v. Valencia</u>, 792 F.2d 4 (1st Cir. 1986).

In San Juan, Puerto Rico, this 13th day of August, 2011.

s/Marcos E. López
U.S. Magistrate Judge

---

[7]The denial of qualified immunity "at the motion-to-dismiss stage does not preclude renewal of the defense in a subsequent motion for summary judgment or at trial." <u>Jordan v. Carter</u>, 428 F.3d 67, 76 n.4 (1st Cir. 2005).