**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| ROCKET LEARNING, INC., *et al.*, <br><br> **Plaintiffs,** <br><br> **v.** <br><br> JESUS RIVERA-SANCHEZ, in his personal capacity and as the Secretary of the Puerto Rico Department of Education, <br><br> **Defendant.** | **CIVIL NO.** 10-2252 (FAB) |

**OPINION AND ORDER**

BESOSA, District Judge.

Before the Court is the Report and Recommendation ("R&R") (Docket No. 110) regarding defendant's motion to dismiss the amended complaint (Docket No. 99). Having considered the magistrate judge's recommendations, defendant's partial objection (Docket No. 112), the opposition to plaintiffs' objection (Docket No. 118), plaintiffs' partial objection (Docket No. 111) and the opposition to defendant's objections (Docket No. 117), the Court **ADOPTS IN PART AND REJECTS IN PART** the findings and recommendations of the magistrate judge.

**I.   Factual Background**

The Court declines to rehash all of the facts that are contained in the magistrate judge's report and recommendation. (Docket No. 110 at 5-6.)  Instead, the Court provides a brief

overview of the facts, taken from the R&R, and will supply more details as needed.

Plaintiffs are providers under the Supplemental Educational Services ("SES") program in Puerto Rico.  They were certified providers under the program for the 2010-2011 academic year, and submitted their proposals under the rules of the SES manual in effect in August 2010 ("Old Manual").  The Old Manual did not require plaintiffs to list all electronic devices it planned to use specifically as part of the provider's program.  The Old Manual stated that the provider had to describe and "evidence" [sic] the "educational teaching materials" that would be used in their curricula.

In September 2010, the Secretary of Education ("Secretary" or "PRDE") issued a new version of the manual ("New Manual").  The New Manual imposed a requirement that all technological devices used in a provider's program had to be specifically identified in a company's proposal.  The PRDE did not request or permit providers to submit new proposals to conform with the rule change.

In November 2010, the PRDE sent an e-mail to a select group of providers asking for additional information about the electronic devices those providers planned to use in their programs. Plaintiffs did not receive this e-mail, although they had included use of audiobooks, music and video in their proposals.  Also in November 2010, the PRDE announced that, for the first time,

students would be allowed to keep the educational equipment used during the SES program and that providers would be allowed to promote the electronic equipment, provided that the gifts were not the focal point of the program.  The PRDE clarified that only the providers who had complied with the requirements of the New Manual or who had received and responded to the November e-mail asking for additional information would be allowed to promote and give away electronic equipment as gifts.

## II.  Procedural History

On March 25, 2011, plaintiffs submitted an amended verified complaint against the Secretary in his personal and official capacity, alleging violations of equal protection of the laws, substantive and procedural due process violations, deprivation of rights to commercial speech, damages pursuant to 42 U.S.C. §1983, and requesting preliminary and permanent injunctive relief, and a declaratory judgment.  (Docket No. 97.)  On April 6, 2011, defendant filed a motion to dismiss the amended complaint. (Docket NO. 99.)  On August 13, 2011, the United States magistrate judge issued a R&R, recommending that defendant's motion to dismiss the amended complaint under Federal Rules of Civil Procedure 12(b)(1) and (6) be **GRANTED IN PART AND DENIED IN PART.**  (Docket No. 110.) Plaintiffs filed a partial objection to the R&R on August 31, 2011. (Docket No. 111.)  Defendant filed a partial objection to the R&R on September 1, 2011.  (Docket No. 112.)  On September 22, 2011,

plaintiffs opposed defendant's objection.  (Docket No. 117.)  On the same date, defendant opposed plaintiffs' objection.  (Docket No. 118.)

The R&R recommends that:

- Plaintiffs' claims for declaratory relief be DISMISSED due to defendant's Eleventh Amendment immunity;

- Plaintiffs' claims for injunctive relief be found MOOT;

- Defendant's motion to dismiss plaintiffs' equal protection claims be DENIED;

- Defendant's motion to dismiss plaintiffs' procedural and substantive due process claims be GRANTED;

- Defendant's motion to dismiss plaintiffs' commercial speech claims be GRANTED; and

- Defendant's request for qualified immunity be DENIED.

The plaintiffs make three specific objections to the R&R: (1) they allege that they have shown a violation of their right to speech under the First Amendment; (2) that they have made a showing of procedural and substantive due process violations; and (3) that the magistrate judge committed error by deciding not to consider the record of the preliminary injunction hearing.  (Docket No. 111.)  The defendant makes the following objections to the R&R: (1) the magistrate judge committed error by failing to consider the exhibits incorporated into the amended complaint; (2) plaintiffs have failed to make a showing of a violation of equal protection of

the laws; and (3) the individual defendant (the Secretary) is entitled to qualified immunity.  (Docket No. 112.)

## III. Legal Standards

### A.   Standard Under 28 U.S.C. § 636(b)(1)

A district court may refer, *inter alia*, dispositive motions to a magistrate judge for a report and recommendation. Loc. Rule 72(a)(9); see 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b).  Any party adversely affected by the report and recommendation may file written objections within fourteen days of being served with the magistrate judge's report.  See 28 U.S.C. § 636(b)(1)(C); Loc. Rule 72(d).  A party that files a timely objection is entitled to a *de novo* determination of "those portions of the report or specified proposed findings or recommendations to which specific objection is made." Sylva v. Culebra Dive Shop, 389 F.Supp.2d 189, 191 (D.P.R. 2005) (citing United States v. Raddatz, 447 U.S. 667, 673 (1980)).  Failure to comply with this rule precludes further review.  See Davet v. Maccarone, 973 F.2d 22, 30-31 (1st Cir. 1992) ("Failure to raise objections to the Report and Recommendation waives the party's right to review in the district court . . . .").  If the objection is merely a "repetition of the arguments [a party] made to the magistrate judge, a *de novo* review is unwarranted" and the district court need only review the report and recommendation for clear error.  Latin Am. Music Co. v. Media Power Grp., Inc., No. 07-2254, 2011 U.S. Dist. LEXIS 34824, at *4

(D.P.R. March 29, 2011) (internal citation omitted); see Rivera-Garcia v. United States, No. 06-1004, 2008 U.S. Dist. LEXIS 60305, at *5 (D.P.R. Aug. 7, 2008) (de novo review not warranted when party's objection "constitute[d] nothing more than a rehashing of the original argument made in his original Petition."). In conducting its review, the court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); Jasty v. Wright Med. Tech., Inc., 528 F.3d 28, 33-34 (1st Cir. 2008). Furthermore, a court may accept those parts of the report and recommendation to which the parties do not object. See Hernandez-Mejias v. Gen. Elec., 428 F.Supp.2d 4, 6 (D.P.R. 2005) (citing Lacedra v. Donald W. Wyatt Det. Facility, 334 F.Supp.2d 114, 126 (D.R.I. 2004)).

**B.    Standard Under 12(b)(1)**

Federal courts are courts of limited jurisdiction. Destek Grp. v. State of N.H. Pub. Utils. Comm'n., 318 F.3d 32, 38 (1st Cir. 2003). Therefore, "federal courts have the duty to construe their jurisdictional grants narrowly." Fina Air, Inc. v. United States, 555 F.Supp.2d 321, 323 (D.P.R. 2008) (citing Alicea-Rivera v. SIMED, 12 F.Supp.2d 243, 245 (D.P.R. 1998)). Because federal courts have limited jurisdiction, the party asserting jurisdiction carries the burden of showing the existence of federal

jurisdiction.  <u>Viqueira v. First Bank</u>, 140 F.3d 12, 16 (1st Cir. 1998) (internal citations omitted).

Pursuant to Rule 12(b)(1), a party may move to dismiss an action for lack of subject-matter jurisdiction.  Fed.R.Civ.P. 12(b)(1); <u>see also</u> <u>Valentin v. Hosp. Bella Vista</u>, 254 F.3d 358, 362 (1st Cir. 2001) (discussing how Rule 12(b)(1) is the "proper vehicle for challenging a court's subject-matter jurisdiction."). Motions brought under Rule 12(b)(1) are subject to a similar standard as Rule 12(b)(6) motions.  Defendant states that it is making a motion to dismiss under both Rules 12(b)(1) and 12(b)(6). Subject-matter jurisdiction is properly invoked when a colorable claim "arising under" the Constitution or law of the United States is pled.  28 U.S.C. § 1331; <u>Arbaugh v. Y&H Corp.</u>, 546 U.S. 500, 513 (2006) (internal citation omitted).  Usually, a claim arises under federal law if a federal cause of action emerges from the face of a well-pleaded complaint.  <u>See</u> <u>Viqueira</u>, 140 F.3d at 17 (internal citations omitted).  Therefore, in considering a Rule 12(b)(1) motion, "[the district court] must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor."  <u>Merlonghi v. U.S.</u>, 620 F.3d 50, 54 (1st Cir. 2010) (citing <u>Valentin v. Hosp. Bella Vista</u>, 254 F.3d at 363).

**C.    Standard Under 12(b)(6)**

Rule 12(b)(6) allows a court to dismiss a complaint when it fails to state a claim upon which relief can be granted.  When

considering a motion under Rule 12(b)(6), a court must accept the
"well-pleaded facts as they appear in the complaint, extending
[the] plaintiff every reasonable inference in his [or her] favor."
Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 34 (1st Cir. 2002).
"[A]n adequate complaint must provide fair notice to the defendants
and state a facially plausible legal claim." Ocasio-Hernandez v.
Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). When faced with a
motion to dismiss, "[a] plaintiff is not entitled to 'proceed
perforce' by virtue of allegations that merely parrot the elements
of the cause of action." Id. at 12 (quoting Ashcroft v. Iqbal, 129
S.Ct. 1937, 1950 (2009)). Any "[n]on-conclusory factual
allegations in the complaint [, however,] must . . . be treated as
true, even if seemingly incredible." Id. (citing Iqbal, 129 S.Ct.
at 1951). Where those factual allegations "'allow[ ] the court to
draw the reasonable inference that the defendant is liable for the
misconduct alleged,' the claim has facial plausibility." Id.
(quoting Iqbal, 129 S.Ct. at 1949). Furthermore, a court may not
"attempt to forecast a plaintiff's likelihood of success on the
merits; 'a well-pleaded complaint may proceed even if . . . a
recovery is very remote and unlikely'." Id. at 13 (citing Bell
Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)). The relevant
inquiry, therefore, "focuses on the reasonableness of the inference
of liability that the plaintiff is asking the court to draw from
the facts alleged in the complaint." Id.

According to Rule 12(b)(6), a court must base its determination solely on the material submitted as part of the complaint or central to it. Fudge v. Penthouse Int'l. Ltd., 840 F.2d 1012, 1015 (1st Cir. 1988). Generally, "a court may not consider documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001). "When . . . a complaint's factual allegations are expressly linked to - and admittedly dependent upon - a document (the authenticity of which is not challenged), [however,] that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998) (internal citation omitted). This is especially true where the plaintiff has "actual notice . . . and has relied upon these documents in framing the complaint." Watterson v. Page, 987 F.2d 1, 4 (1st Cir. 1993).

## IV. Discussion

### A. Scope of Evidence Considered in R&R

As an initial matter, the Court addresses each party's objections regarding the scope of evidence considered in the R&R. In making its determinations, the magistrate judge did not take into account any exhibit attached to the original verified complaint, nor did he take into account the record of the

preliminary injunction hearings. <u>See</u> Docket No. 110 at 11-13.
Defendant challenges the magistrate judge's decision regarding the
former, while plaintiffs challenge the decision regarding the
latter. The Court addresses each objection in turn.

### 1.   Exhibits Incorporated into the Complaint

Defendant alleges that the magistrate judge erred in
failing to consider exhibits attached to the original verified
complaint in deciding the motion to dismiss. (Docket No. 112
at 3.) Defendant alleges that exhibits attached to the original
complaint are "incorporated" into the pleading and can be reviewed
by a trial court without converting the motion to dismiss into one
for summary judgment. <u>Id.</u> Defendant further maintains that
Exhibit 1 of the complaint negates the allegations plaintiffs plead
in their complaint, that the exhibit controls in a motion to
dismiss analysis, and that the exhibit requires dismissal of the
equal protection claim. <u>Id.</u>

The First Circuit Court of Appeals has held that
"[e]xhibits attached to the complaint are properly considered part
of the pleading 'for all purposes,'" including Rule 12(b)(6)
motions. <u>Trans-Spec Truck Service, Inc. v. Caterpillar Inc.</u>, 524
F.3d 315, 321 (1st Cir. 2008). The exhibits attached to
plaintiffs' original complaint are deemed "incorporated into the
[amended] complaint" even though the exhibits were not physically
attached to it. <u>See id.</u> Defendants' allegation, however, that

Exhibit 1 "flatly contradicts" the pleadings in the amended complaint, and thus requires dismissal of the equal protection claim, is not persuasive. See Docket No. 112 at 5. Exhibit 1, the Request for Proposal for the Certification and Recertification of Supplemental Educational Services Providers, the manual in effect when plaintiffs submitted their proposals for the 2010-2011 academic year, states in part that the provider must describe and "evidence" [sic] the "educational teaching materials" that will be used in their curricula.  (Docket No. 46-1 at 13-14.)  This is completely consistent with plaintiffs' allegations in the complaint that the New Manual imposed "for the first time ever, a requirement . . . that all technological devices to be used in the teaching process be specifically identified in the company's proposals." (Docket No. 97 at 9.)  Therefore, while the Court finds that the exhibits attached to the original complaint may be incorporated into the amended complaint, defendant's request that the Court dismiss plaintiffs' equal protection claim on this basis is **DENIED**.

### 2.    **Record of Preliminary Injunction Hearing**

Plaintiffs allege that the magistrate judge should have taken judicial notice of the record of the preliminary injunction hearing in ruling on defendant's motion to dismiss. (Docket No. 111 at 9.)  Plaintiffs maintain that the record could have been considered by the magistrate judge without converting the motion to dismiss into one for summary judgment, "since the record

was created by both parties and since there is no risk of lack of notice for plaintiff." Id. at 12. In their opposition to plaintiffs' objection, defendant argues that the magistrate judge correctly excluded the preliminary injunction hearing record from his analysis because it included findings based on evidence to which the defendant objected. (Docket No. 118 at 2.) The prevailing standard adopted by the First Circuit Court of Appeals is that "any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden, unless the proceeding is properly converted into one for summary judgment under Rule 56." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). Narrow exceptions to this rule exist for the following: "documents the authenticity of which are not disputed by the parties; official public records; documents central to plaintiffs' claim; or documents sufficiently referred to in the complaint." Id. The record of the preliminary injunction hearing does not fit squarely into any of these narrow exceptions; in fact, as the magistrate judge pointed out, other courts have held that if evidence presented at a preliminary injunction hearing is to be relied on in deciding a motion to dismiss, the court must convert such motions into ones for summary judgment. See Docket No. 110 at 11-12. Therefore, plaintiffs' request that this Court consider the record developed at the preliminary injunction hearing in deciding the motion to dismiss is **DENIED**.

### B.    Plaintiffs' Equal Protection Claim

Defendant alleges that the magistrate judge erred in denying the motion to dismiss with respect to plaintiffs' equal protection claim because (1) plaintiffs were not similarly situated to other Supplemental Education Services ("SES") providers, (2) plaintiffs failed to establish defendant's discriminatory intent, and (3) defendant's actions were rationally related to a legitimate government purpose. (Docket No. 112 at 6-13.)  In order to assess the parties' arguments adequately, the Court engages in a brief overview of the relevant facts, many of which have been elaborated in the report and recommendation.  <u>See</u> (Docket No. 110.)

Plaintiffs filed their proposals for the 2010-2011 academic year in accordance with the rules of the Old Manual.  The Old Manual did not require proposals specifically to list all electronic devices to be used as part of a provider's program; it simply required providers to list the teaching materials they would use in their program generally.  (Docket No. 46-2; 46-1 at 13-14, directing providers to "[d]escribe any additional teaching material you plan on using and have not described before" and "[e]vidence [sic] the educational teaching materials by grade and by subject that correspond to the students' needs that have been identified.").  In September 2010, the Secretary issued a new version of the manual ("New Manual"), which directed providers that "[a]ny electronic equipment or material to be used as support

resources in the learning process must be specifically included in
the intervention model submitted in the proposal for certification
or re-certification as a SES provider." (Docket No. 46-6 at 14.)

        Plaintiffs submitted their proposal according to the
directions of the Old Manual, and were not instructed or invited to
re-submit proposals to comply with the instructions of the New
Manual.  In November 2010, the PRDE sent an e-mail to a select
group of providers, requesting additional information regarding the
electronic devices the providers planned to use in their services.
Plaintiffs were not included in the e-mail and did not receive it,
despite the fact that their proposal included educational content
requiring the use of audiobooks, music, and video.  Also in
November 2010, the PRDE announced that students would be allowed to
keep the educational equipment used in the SES program, and that,
contrary to the provisions of the Old and New Manuals, providers
would be allowed to promote such equipment during the enrollment
process, but only if they had complied with the requirements of the
New Manual to list all electronic devices, which plaintiffs had not
done.

        Broadly stated, in order to establish an equal protection
claim, plaintiffs must show that they "were treated differently
from 'others similarly situated . . . based on impermissible
considerations such as race, religion, intent to inhibit or punish
the exercise of constitutional rights, or malicious or bad faith

intent to injure a person.'" <u>Clark v. Boscher</u>, 514 F.3d 107, 114 (1st Cir. 2008) (quoting <u>Aponte-Torres v. Univ. of P.R.</u>, 445 F.3d 50, 57 (1st Cir. 2006)). Upon reviewing the complaint, it is clear that the crux of plaintiffs' claim is that the Secretary selectively and arbitrarily favored a few select companies over plaintiffs, giving them an advantage in the procurement and enrollment process for the SES program. (Docket No. 97.) Essentially, plaintiffs challenge the award of certain benefits that were afforded to other SES providers and denied to them.

An equal protection claim based on a denial of benefits allegation is subject to a particular model of analysis where the plaintiff "faces a steep uphill climb." <u>Pagan v. Calderon</u>, 448 F.3d 16, 34 (1st Cir. 2006) (finding denials of benefits analysis applicable where plaintiff alleged that government-sponsored banking entity treated plaintiff unfairly and granted a loan to another "similarly situated" borrower). Specifically, a plaintiff can only succeed in a denial of benefits case "if he shows that (i) he was treated differently than other similarly situated supplicants and (ii) the differential treatment resulted from a gross abuse of power, invidious discrimination, or some other fundamental procedural unfairness." <u>Pagan</u>, 448 F.3d at 34. The magistrate judge analyzed plaintiffs' equal protection claim by reviewing whether plaintiffs were "similarly situated", whether defendant had "intentionally discriminated" against plaintiffs, and

whether defendant had acted "rationally" in making his decision. (Docket No. 110 at 14-20.)  The Court addresses these issues in turn.

### 1.   "Similarly Situated" Analysis

The PRDE argues that the magistrate judge incorrectly determined that plaintiffs were similarly situated "to other providers that included technology in their proposals and that received the November 2010 e-mail." See Docket No. 110 at 16. The magistrate judge determined that because plaintiffs alleged that they did not receive the e-mail from the PRDE despite the fact that some of their proposals included the use of audiobooks, music and video, plaintiffs have set forth sufficient evidence at the motion to dismiss stage to show that they were similarly situated to other providers that did include electronic devices in their proposals and received the e-mail.  See Docket No. 110 at 15-16. Defendant maintains that plaintiffs' reference to music and audiobooks were not the type of technological devices that warranted the receipt of an e-mail from defendant, because there was no logical connection between the inclusion of music and audiobooks in plaintiffs' tutorials and concluding that those were educational technological devices that would be given as gifts to students at the end of the program, and thus did not require the communication contained in the e-mail.  Docket No. 112 at 12.

To determine whether plaintiffs are "similarly situated" to other providers, the Court must determine "whether a prudent person, looking objectively at the incidents, would think them roughly equivalent." Barrington Cove Ltd. Partnership v. Rhode Island Housing and Mortg. Finance Corp., 246 F.3d 1, 8 (1st Cir. 2001) (citing Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 19 (1st Cir. 1989). It is essential that plaintiffs allege that they were "similarly situated 'in all relevant aspects'" to the other SES providers. Id. The magistrate judge determined that plaintiffs' allegations that they included use of audiobooks, music and video in their proposal was sufficient to establish "that plaintiffs were substantially similar to other providers that included technology in their proposals and that received the November 2010 email." (Docket No. 110 at 16.) Plaintiffs' allegations, however, fail to mention whether other providers who included audiobooks, music and video did, in fact, receive the November 2010 e-mail. See Barrington Cove, 246 F.3d at 8 (finding that it was "incumbent" upon plaintiff to mention in its complaint whether its coapplicants shared the characteristics plaintiff alleged it possessed in order to allege the "correlations with reasonable particularity" properly). Instead, plaintiffs seem to argue that the definition of "electronic devices" for the purpose of receiving the November e-mail should have included audiobooks, music and video, and thus, they were similarly situated to other

providers who included electronic devices in their proposals and
received the November e-mail.  The complaint does not make out, on
its face, allegations sufficient to establish that plaintiffs were
substantially similar to other providers that included the same
kinds of electronic devices in their proposals and received the
November e-mail.  See Barrington Cove, 246 F.3d at 9 (finding that
plaintiff failed to state a claim of equal protection in part
because (1) the complaint included allegations which intimated that
plaintiff was not similarly situated to other applicants, and
(2) there was no indication that the information plaintiff would
have needed to evaluate whether its coapplicants were similarly
situated was inaccessible to plaintiff.)

          2.   **Discriminatory Intent**

          In any case, there is an even more basic reason why
plaintiffs' equal protection claim fails to pass constitutional
muster:  plaintiffs' allegations fall short of satisfying the
second half of the equal protection analysis.  Thus, even if the
Court were to accept plaintiffs' allegations of being "similarly
situated" to other providers, they have offered "no allegations
indicating that the disparate treatment . . . resulted from a gross
abuse of power, invidious discrimination, or fundamentally unfair
procedures."  Pagan, 448 F.3d at 35.  The complaint does not allege
any facts that would imply a gross abuse of power or invidious
discrimination.  The complaint makes plenty of references to the

"unfair and discriminatory procedures that were being sanctioned by the Secretary" (Docket No. 97 at 10), but these allegations fall short of suggesting the kind of "egregious" behavior that would constitute a "fundamentally unfair procedure." See CM Services, Inc. v. Cordero-Lebron, No. 10-2264, 2012 WL 706955, at *3-5 (D.P.R. Mar. 5, 2012). This standard may well be met if plaintiffs were discriminated against on the basis of race, or "where recognized fundamental constitutional rights are abridged by official action", but in the context of "ordinary state administrative proceeding[s]", as is the case here, plaintiffs allegations fall woefully short of passing this constitutional hurdle. See Creative Environments, Inc. v. Estabrook, 680 F.2d 822, 832 (1st Cir. 1982).

Finally, even under the more generous equal protection analysis used by the magistrate judge, which requires plaintiffs to show that they were treated differently from others similarly situated "based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person", plaintiffs have failed to state an equal protection violation. See Clark v. Boscher, 514 F.3d 107, 114 (1st Cir. 2008) (quoting Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 57 (1st Cir. 2006). Even granting plaintiffs all reasonable inferences, their well-pleaded facts fail to meet this standard. The magistrate

judge determined that "[i]t is reasonable to infer . . . that the PRDE was aware of the detrimental impact that permitting some providers - but not all - to promote such giveaways would have on the providers, including plaintiffs, that were not permitted to do so." (Docket No. 110 at 18.) As defendant correctly alleges in his objection to the R&R, however, mere knowledge that the challenged action may have a discriminatory effect on plaintiffs is not sufficient to plead an equal protection violation. See Docket No. 112 at 9 (citing Personnel Adm'r. of Massachusetts v. Feeney, 442 U.S. 256, 279 (1979) (in the context of an equal protection analysis, "discriminatory purpose" "implies more than intent as volition or intent as awareness of consequences.").

Moreover, a plaintiff that does not rely on "'typical' impermissible categories, such as race or religion, must show that he [or she] was intentionally treated differently from others similarly situated, that no rational basis exists for that difference in treatment, and that the different treatment was based on a malicious or bad faith intent to injure." Buchanan v. Maine, 469 F.3d 158, 178 (1st Cir. 2006). Discriminatory purpose "implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." Feeney, 442 U.S. at 279 (1979). Defendant maintains that plaintiffs were treated differently from other providers because

plaintiffs did not include in their proposal the kind of electronic devices that would have warranted receipt of the e-mail that requested additional information and formed the basis of the decision to allow some providers to promote and give away electronic devices and prohibit others, including plaintiffs, from doing the same.  (Docket No. 112 at 11-13.)  Plaintiffs urge the Court to consider their right to commercial speech as the underlying constitutional right that was inhibited by defendant's actions.  For reasons explained below, however, the Court finds plaintiffs' argument unpersuasive.  Instead, the Court must determine whether plaintiffs were treated differently based on "malicious or bad faith intent to injure a person." See Clark, 514 F.3d at 114 (1st Cir. 2008) (citations omitted).  The First Circuit Court of Appeals has indicated that cases demonstrating "different treatment" and "evidence of bad faith or malicious intent to injure" are "infrequent."  Yerardi's Moody Street Restaurant & Lounge, Inc. v. Board of Selectmen of Town of Randolph, 932 F.2d 89, 94 (1st Cir. 1991) (noting that where plaintiff's equal protection claim does not rest on alleged violation of a constitutional right, it is necessary that plaintiff "scrupulously" meet the "malice/bad faith" element of its claim.)  Plaintiffs' factual allegations regarding defendant's "bad faith" are inadequate.  In fact, the complaint states that "The Secretary [sic] real motivation for his irrational and arbitrary acts will be

uncovered during the discovery of evidence process." (Docket
No. 97 at 17.)  The Court acknowledges that the defendant's last
minute rule changes and retroactive application of the New Manual
prejudiced certain providers, including plaintiffs, and that the
administrative process governing the selection of SES providers
failed to be wholly transparent.  Defendant's justification for the
decision not to include plaintiffs in the group of providers who
received the November e-mail and were subsequently allowed to
promote and give away electronic devices can be explained, however,
as a rational decision based on defendant's understanding of an
"educational technological device" and plaintiffs' failure to
include the type of technological devices in their proposals that
would have required approval to promote and give away those
devices.  Thus, while the PRDE's administrative process appears to
be ambiguous and ill-defined in some respects, plaintiffs'
allegations regarding defendant's discriminatory intent fails to
meet the standard required to establish a violation of plaintiffs'
right to equal protection.   Defendant's motion to dismiss
plaintiffs' equal protection claim is **GRANTED.**

### C.   Plaintiffs' Due Process Claims

        Plaintiffs challenge the magistrate judge's determination
that plaintiffs have failed to articulate any legal basis for their
claim that the SES certification qualifies as a property interest.
The threshold question in a due process inquiry "is whether

plaintiffs were deprived of a liberty or property interest protected by the United States Constitution." <u>Aponte-Rosario v. Acevedo-Vila</u>, 617 F.3d 1, 9 (1st Cir. 2010). Plaintiffs are required to "identify a 'legitimate claim of entitlement' to the property in question - a claim of entitlement created and defined by 'existing rules or understandings that stem from an independent source such as state law.'" <u>Centro Medico del Turabo, Inc. v. Feliciano de Melecio</u>, 406 F.3d 1. 8 (1st Cir. 2005). Plaintiffs allege that "Puerto Rico has been particularly liberal in creating property entitlements", but cite no case law that supports their proposition that plaintiffs' SES certification created "a property right to participate in a fair, rational and non-discriminatory pre-enrollment process." (Docket No. 111 at 6-8.) In fact, as the R&R points out, under Puerto Rico law, a bidder for a contract with the government does not acquire a property interest until the contract has been formalized. <u>Cancel v. Municipio de San Juan</u>, 1 P.R. Offic. Trans. 416 (1973) (". . . an agency has the right to revoke the award of a contract at any time before the corresponding contract is entered into, since a contract is not binding on an agency until formal contract containing all the legal requirements for the performance of the work is executed in writing.") (citation omitted). In their objections to the R&R, plaintiffs do not attempt to distinguish <u>Cancel</u> from the situation before the Court, but instead cite to a Puerto Rico Supreme Court case that

Civil No. 10-2252 (FAB)                                              24

apparently discusses the property interest of former governors in receiving police protection, which is completely irrelevant to plaintiffs' case.  Moreover, the case cited by plaintiffs was not provided with an English translation, so the Court will not consider it.  Puerto Ricans for Puerto Rico Party v. Dalmau, 544 F.3d 58, 67 (1st Cir. 2008) ("Where a party makes a motion to dismiss based on a decision that was written in a foreign language, the party must provide the district court with and put into the record an English translation of the decision.").  Defendant's motion to dismiss plaintiffs' due process claims is **GRANTED**.

D.   **Plaintiffs' Free Speech Claim**

Plaintiffs challenge the magistrate judge's determination that (1) plaintiffs' commercial speech claim fails the Central Hudson test and (2) is merely incidental to plaintiffs' equal protection allegation that plaintiffs were prohibited from giving away the technological devices at all.  (Docket No. 110 at 16-17 and 23-24, citing Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n. of New York, 447 U.S. 557, 561 (1980)).  Plaintiffs allege that "the prohibition of the underlying activity (giving away electronic devices) is the result of an unconstitutional act" and that the prohibition against publicizing the underlying activity is "the most important aspect" of "defendants' unconstitutional scheme." (Docket No. 111 at 4-5.)  Finally, plaintiffs maintain that a strict scrutiny analysis is required because defendant's

actions impinge on plaintiffs' fundamental right to free speech.
Id.

        The R&R classifies plaintiffs' commercial speech claim,
"at its root, [as] an equal protection claim asserting that
plaintiffs - unlike similarly situated providers - were unfairly
prohibited from giving away devices at all."  (Docket No. 110
at 16.)  The magistrate judge is correct.  The PRDE issued a public
notice before the start of the second enrollment period which
announced that students would be able to keep the educational
equipment used during the SES program, and that providers would be
allowed to promote such equipment during the enrollment process,
provided that the gifts were not the focal point of the provider's
program.  (Docket No. 110 at 5.)  As discussed in the equal
protection analysis, plaintiffs were excluded from the group of
providers who could promote and give away the gifts because they
were not deemed to be similarly situated to other providers, and
thus they could neither give away nor promote the giving away of
any educational equipment to students.  Thus, the restriction on
plaintiffs' ability to advertise the giving away of educational
equipment "is only incidental to" the prohibition on plaintiffs'
right to engage in the activity of giving away the educational
equipment.  See Ford Motor Co. v. Texas Dept. of Transp., 264 F.3d
493, 506 (5th Cir. 2001).  This is precisely the reason why
rational basis review, and not strict scrutiny, applies to

plaintiffs' claim:  under the plaintiffs' reasoning, "a petitioner could bootstrap themselves into the heightened scrutiny of the First Amendment simply by infusing the prohibited conduct with some element of speech."  Id.

        Moreover, plaintiffs' allegation that the promotion of the gifts is "the most important aspect" of the scheme is misguided:  if, as this Court has determined, plaintiffs did not include the type of electronic devices in their proposals that defendant understood could be given away as gifts to students, they were not only banned from the underlying activity of gift-giving, but they were also banned from promoting the giving away of gifts, as allowing the latter without the former would clearly be misleading, and thus in violation of the first prong of the Central Hudson test.  See 447 U.S. at 566 ("For commercial speech to come within [the First Amendment], it at least must concern lawful activity and not be misleading.").  In other words, it is axiomatic that allowing plaintiffs to promote the giving away of equipment would be hollow and untruthful without the accompanying substantive right actually to give away the equipment.  Plaintiffs argue that defendant may have had a legitimate state objective in allowing only certain providers to give away electronic devices, but should have prohibited all providers from promoting the giving away of gifts, because the advertising of gifts is what "directly caused" the decline in plaintiffs' enrollment levels.  (Docket No. 111

at 4.)  As the Court has stated above, while the administrative process governing SES enrollment lacked the transparency and clarity that is expected of a government agency, the Court is not in a position to make value judgments about the PRDE's decision to allow the promotion and giving away of gifts to underprivileged students in Puerto Rico.  While plaintiffs make compelling policy arguments regarding the "serious derailment" of the supplemental education services system caused by defendant's policies governing the giving away of gifts, the Court will not micro-manage a local government agency's administrative decisions where the complaining party's allegations have not sufficiently pleaded a constitutional violation.  For the reasons stated, defendant's motion to dismiss plaintiffs' commercial speech claims is **GRANTED.**

### E.   Defendant's Qualified Immunity Request

The Secretary challenges the magistrate judge's recommendation that qualified immunity be denied.  The R&R determined that qualified immunity was not appropriate because (1) the plaintiffs pled a viable equal protection claim and (2) defendant utilized the SES regulations "in such a manner as to clearly discriminate against a group of similarly situated providers."  (Docket No. 110 at 25.)  "The qualified immunity doctrine provides defendant public officials an immunity from suit and not a mere defense to liability."  Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009) (citing Mitchell v. Forsyth, 472 U.S.

511, 526 (1985).  Defendant is entitled to qualified immunity
unless:  "(1) the facts alleged or shown by the plaintiff make out
a violation of a constitutional right and (2) such right was
clearly established at the time of the defendant['s] alleged
violation[s]."  <u>Feliciano-Hernandez v. Pereira-Castillo</u>, 663 F.3d
527, 532 (1st Cir. 2011) (citing <u>Maldonado</u>, 568 F.3d at 269).  This
Court has determined that plaintiffs have failed to allege a
violation of any constitutional right sufficiently.  Contrary to
the magistrate judge's recommendation that plaintiffs pled a viable
equal protection claim, the Court has found that plaintiffs have
failed to establish that they were "similarly situated" to other
providers who were able to engage in the promotion and giving of
gifts, that there was no rational basis for defendant's actions, or
that defendant acted with discriminatory intent.  Because
plaintiffs failed the first prong of the test, the qualified
immunity analysis is **MOOT**.

## V.   Conclusion

The Court has made an independent examination of the entire
record in this case, including both parties' objections to the R&R,
and **ADOPTS IN PART AND REJECTS IN PART** the magistrate judge's
findings and recommendations as the opinion of this Court.

Accordingly, defendant's motion to dismiss the equal
protection claims, due process claims, and free speech claims are
**GRANTED**.  Defendant's request for qualified immunity is **MOOT**.

Plaintiffs' request for damages under 42 U.S.C. § 1983, permanent injunctive relief, and declaratory judgment are deemed **MOOT.**

This case is **DISMISSED with prejudice.**  Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, March 30, 2012.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE